UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA L. HOWARD-JOHNSON, | ) | CASE NO. 5:11CV2783 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE GEORGE J. |
| | ) | LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION AND** |
| COMMISSIONER OF | ) | **ORDER** |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Cynthia L. Howard-Johnson ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the Commissioner's decision is affirmed and Plaintiff's complaint is dismissed with prejudice:

## I.        PROCEDURAL AND FACTUAL HISTORY

On November 4, 2008, Plaintiff applied for DIB and SSI, alleging disability beginning October 1, 2008. Tr. at 122-126. Plaintiff's date last insured is December 13, 2013. Tr. at 11. The SSA denied Plaintiff's application initially and on reconsideration. Tr. at 63-66. On September 9, 2009, the SSA acknowledged Plaintiff's request for an administrative hearing. Tr. at 90-91. On November 15, 2010, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. Tr. at 25-61. At the hearing, the ALJ accepted the testimony of Plaintiff and Mark Anderson, a vocational expert ("VE"). On December 23, 2010, the ALJ issued a Decision denying benefits. Tr. at 6-24. Plaintiff filed a request for review, and, on October 26, 2011, the Appeals Council denied Plaintiff's request for review. Tr. at 1-3.

On December 27, 2011, Plaintiff filed the instant suit seeking review of the Decision.  ECF Dkt. #1.  On July 9, 2012, with leave of the Court, Plaintiff filed a brief on the merits.  ECF Dkt. #15. On August 23, 2012, Defendant filed a brief on the merits.  ECF Dkt. #16.  No reply brief was filed.

## II.     SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff, who was forty-five years of age at the hearing, suffered from asthma, degenerative disc disease of the cervical spine, status-post ankle fracture, bipolar disorder and cocaine dependence in remission, which qualified as severe impairments under 20 C.F.R.  §404.1520, and 416.971.  Tr. at 11. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. 404.920(d) ("Listings").  Tr. at 22.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.1567(c), except that Plaintiff may frequently crawl and climb ladders, ropes or scaffolds; Plaintiff should avoid concentrated exposure to environmental irritants, such as fumes, odors, dusts, and gases; Plaintiff can perform simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements, and involving only simple work related decisions and routine work place changes; Plaintiff can have only superficial interaction with the public and no direct interaction with the public; Plaintiff can have only occasional interaction with co-workers.  *Id.* at 13.  Although the ALJ found that Plaintiff could not perform her past relevant work, she concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, and, therefore, Plaintiff had not been under a disability as defined by the SSA and was not entitled to benefits.  *Id.* at 18.

## III.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits.  These steps are:

1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.   An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.   If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.   If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV.**   **STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted).  An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of

the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

## V.     ANALYSIS

Plaintiff's mother, grandmother and grandfather died within a year of each other, and after their deaths, Plaintiff fell into a deep depression. Tr. at 370.[1]   Plaintiff was a credit analyst at MBNA for seven years, until she was fired in September of 2006. Tr. at 35, 152. At the time, and continuing through 2008, Plaintiff was abusing cocaine, benzodiazapines, and marijuana. Tr. at 41, 225, 243, 246. Plaintiff testified at the hearing that she last abused drugs in 2008 and that she attends a "substance abuse get together" at a church twice a month to maintain her sobriety. Tr. at 41.

Plaintiff further testified that, at the time of the hearing, she had a part-time job as a cold caller for Dial America. Tr. at 33-34. She worked approximately four and a half hours a day. She testified that she cannot concentrate more than four hours a day. Tr. at 33. She further testified that she leaves work early three or four days a week because of her anxiety. Tr. at 50. Her supervisor at Dial America is aware of her mental problems and allows Plaintiff to call off at the last minute if she cannot function at work. Tr. at 51. Plaintiff testified that she cannot handle irate customers and must hand them off to her supervisor, a problem she never had when she worked for MBNA. Tr. at 52.

At the hearing, Plaintiff testified that she is often very sad and teary, and sometime she cries for days. Tr. at 37. Moreover, her mood shifts dramatically over the course of a day. Tr. at 47. For a week or two every month, she cannot leave her home. Tr. at 38. She is currently prescribed

---

[1]According to an admission history for Laurelwood Hospital dated June 12, 2003, Plaintiff's mother died in April of 2002. Tr. at 219. Plaintiff, after five years of total sobriety, went on a crack cocaine binge for about thirty-six hours. When she was brought home by her husband, she felt "she could not handle anything." Tr. at 219. Because he mother was an only child (as is Plaintiff), she became the sole caretaker of her grandparents. She was diagnosed with major depressive disorder. Tr. at 220.

Trazadone, Seroquel, and Lamictal.  At the time of the hearing, Plaintiff testified that she was currently homeless, and living from day to day with various friends. Tr. at 41.  Plaintiff has two adult children as well as twins, who are in their early teens, and live with their father.  Tr. at 370.

> Plaintiff summarized a typical day in her life, as follows:
>
> Okay. I have two typical days.  One would be a day that I go to work and one would be a day that I wouldn't go to work. So on a typical day that I would go to work I need to be to work at 9:30. I generally try to get up at about 7:00, depending on where I'm at.  I go to work and I get off at 2:00, from 9:30 to 2:00 and then I have to think about where I'm going to sleep the next night, so, sometimes I have already it arranged. Other times I don't. On a day that I'm pretty comfortable at one friend's home, that's a day that I generally don't have to get up and if I don't have to, I won't.

Tr. at 43.  She testified that she sleeps all day when she is not working.  Tr. at 44.  According to her testimony, she takes her medicine on her day off because she sleeps the whole day when she takes her medicine.  Tr. at 40.

She further testified that she sometimes cooks dinner when she is staying with friends.  Tr. at 44.  She is comfortable sharing  meals with her friends and their children, although she testified that she is uncomfortable in crowds. Tr. at 44, 48.  She has not read a book in years because of her difficulty concentrating.  Tr. at 46.

Plaintiff advances two arguments in this appeal. First, she contends that the ALJ erred in giving little weight to the opinion of her treating physician, Enedina Berronesm M.D.  Second, Plaintiff contends that the ALJ failed to consider the impact of Plaintiff's mental impairments and her financial problems on her non-compliance with medication.  Because Plaintiff's appeal is predicated upon her mental impairments, the Court shall limit its discussion to the treatment of her mental impairments.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544.   A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).  If  that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of

-5-

a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).

Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

"When a treating physician . . . submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not entitled to any particular weight." *Turner v. Commissioner of Social Security*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the

-6-

consideration given to the treating source's opinion." *Id.* (internal quotation and citation omitted). In *Turner*, a treating source opined that the claimant was unable to work" and was not "currently capable of a full-time 8-hour workload." *Id.* at *5. The Sixth Circuit held that the ALJ adequately addressed the opinion in stating that it was an opinion on an issue reserved to the Commissioner. *Id.*

Where a treating physician's opinion cannot be given controlling weight, it must be weighed under a number of factors set forth in the Commissioner's Regulations—"namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004)(citing 20 C.F.R. § 404.1527(d)(2)). Opinions of one-time examining physicians and record-reviewing physicians and medical experts who testify during administrative hearings are also weighed under these same factors, including supportability, consistency, and specialization. See 20 C.F.R. § 404.1527(d), (f).

Plaintiff was referred to Dr. Berrones on January 2, 2009 for a psychiatric follow up after Plaintiff was admitted to the hospital with suicidal ideation in October of 2008. Tr. at 370. According to Dr. Berrones' medical notes, Plaintiff last took medication for depression in October of 2006, but stopped after losing her job and her insurance at MBNA. After her hospitalization in October of 2008, she was prescribed Wellbutrin and Zyprexa, but Plaintiff could not afford Wellbutrin so she only took Zyprexa.

Plaintiff described crying spells and poor appetite, as well as episodes of inflated self-esteem and racing thoughts. When she is depressed, she sees a black cat that follows her. Tr. at 371. Dr. Berrones diagnosed bipolar disorder, which had been untreated for the previous two years. Dr. Berrones prescribed Lithium and continued Zyprexa, and gave Plaintiff a GAF score of 51-60, indicating some difficulty in functioning. She noted that Plaintiff reported use of crack cocaine on November of 2008.

Plaintiff saw Dr. Berrones for a second time on January 21, 2009. Tr. at 364-365. Plaintiff had lost her job because she was too emotional to go to work. Although Dr. Berrones described

-7-

Plaintiff as tearful, she concluded that Plaintiff was in stable condition, despite her continued depression.  At a February 5, 2009 appointment, Plaintiff sought an increase in her Lithium prescription, however, Dr .Berrones noted that she had already increased the Lithium prescription at the previous appointment. Tr. at 356-357.  Dr. Berrones further noted that there is a question of compliance with prescribed medication and that Plaintiff's financial problems may be to blame.  As a consequence, Dr. Berrones  gave Plaintiff sample medication.

Plaintiff saw Dr. Berrones on March 22, 2009.  Tr. at 456.  Plaintiff had stopped taking Zyprexa a week before the appointment because she did not have any medication left.  She did not want to stop taking the medication because it was helping her with her mood swings, depression, and irritability.  She reported that she still saw the black cat but it did not bother her.  Plaintiff further reported that she was sleeping all the time and gained weight as a result of taking the medication.  Dr .Berrones' notes reflect that Plaintiff was stable although still depressed, and that Dr. Berrones decreased Plaintiff's Zyprexa dosage due to her weight gain.  Tr. at 457.

At Plaintiff's April 21, 2009 appointment, Plaintiff reported that she was taking her medications but they were not helpful.  Tr. at 454.  Dr. Berrones prescribed Abilify instead of Zyprexa, and continued Plaintiff's Lithium prescription.  Tr. at 455.  Dr. Berrones' notes indicate that Plaintiff was stable despite worsening depression.  At each of Plaintiff's appointments with Dr. Berrones, she described Plaintiff appearance as calm and cooperative, and described her orientation to time, place, and person as proper, and her speech clear with no abnormal thought processes.  Dr. Berrones noted that Plaintiff displayed fair insight and judgment, good memory and remote recall, and normal verbal activity.

On April 27, 2009, Dr. Berrones completed a Mental Status Questionnaire in which she described excessive worry, tremors, and tearfulness on the part of Plaintiff.  Tr. at 529.  She noted poor concentration, and that Plaintiff was easily distracted.  In response to the question, "How would the patient react to the pressures, in work settings or elsewhere, involved in simple and routine, or repetitive tasks?" –  Dr. Berrones responded, "severe breakdown – uncontrolled crying."  Tr. at 530.  Dr. Berrones completed a Daily Activities Questionnaire that same day.  Dr. Berrones observed that Plaintiff had no social support, and minimal interaction with others.  Tr. at 532.  Dr. Berrones further

-8-

observed that Plaintiff is "unable to maintain gainful employment due to severe mood swings from severe depression and uncontrolled crying to mania."  However, Dr. Berrones noted only mild difficulties in Plaintiff's ability to prepare food, shop, take public transportation, bank, and pay bills.

On May 28, 2009, Dr. Berrones completed a form addressing Plaintiff's ability to perform a laundry list of basic mental activities for forty hours per a regular work week.  Dr. Berrones concluded that Plaintiff ability to make occupational adjustments was poor in all categories, with the exception of her ability to maintain regular attendance and be punctual within customary tolerance, which she characterized as poor.  Tr. at 543.  With respect to intellectual functioning, Dr. Berrones characterized Plaintiff's ability to remember and carry out complex or detailed job instructions as poor, but her ability to remember and carry out simple instructions as fair.  Finally, with respect to making personal and social adjustments, Dr. Berrones opined that Plaintiff's ability to socialize, behave in an emotionally stable manner, and relate predictably in social situations was poor, but her ability to maintain her appearance, manage funds and schedules, and leave home on her own were fair.  Tr. at 544.  In the space provided below the statement, "Please provide medical/clinical findings that support this assessment and any other comments or limitations," Dr. Berrones wrote, "44 year old woman with history of bipolar disorder severe with psychotic features; unable to maintain gainful employment due to severe mood swings from severe depression and uncontrollable crying to severe mania."  Tr. at 544.

Plaintiff saw Dr. Berrones for the last time on April 15, 2010, because Plaintiff had moved from Cleveland to Akron.  Tr. at 631-632.  Dr. Berrones notes that Plaintiff has had difficulty with compliance "both with follow up appointments and with taking medication as prescribed."  Tr. at 631.  Plaintiff's previous appointment with Dr. Berrones dated back to October of 2009.  Shortly after that appointment, Plaintiff fractured her ankle and was unable to return to Dr. Berrones for treatment, because Plaintiff was in a cast then a walker since her injury.  Dr. Berrones' notes indicate that Plaintiff was currently seeking psychiatric treatment in Akron.  Plaintiff's medications upon termination of service included Abilify, Trazadone, and Lithium.  Under the inquiry "Describe any problem or issues remaining unresolved which may be significant in the patient's functioning," Dr.

Berrones wrote, "Poor compliance." Tr. at 631. Dr. Berrones provided a GAF score of 51-60, indicating some difficulty in functioning. Tr. at 632.

The ALJ gave little weight to Dr Berrones' conclusions regarding Plaintiff's residual mental functional capacity for the following reasons:

> [Dr. Berrones'] opinion is not consistent with her own treatment records, which indicate a GAF of 51 to 60, suggesting only some difficulty in functioning (23F). Moreover, the medical evidence as a whole does not support her conclusions, especially Dr .Berrones' treatment notes stating that the claimant is stabilized on medications but has periods of decompensation when non compliant (23F/1). Finally, the undersigned gives no weight to Dr. Berrones' opinion that the claimant cannot maintain gainful employment.  Under the Social Security Regulations, statements by treating doctors that a claimant is disabled or unable to work are not medical opinions.  As an opinion on an issue is reserved to the Commissioner of Social Security, it is not given any significance.  20 CFR 404.1527(e)(1)-(3) and 416.927(e)(1)-(3).  Moreover, opinions and statements by doctors, including those of a treating physician, may be disregarded or given little weight when they are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence which appears to be the case here.

Tr. at 16-17.

The ALJ credited Plaintiff's testimony about exacerabations of her mental symptoms but recognized that her problems worsened when she was non-compliant with her medication.  The ALJ's conclusion is supported by the record insofar as the only problem Dr. Berrones acknowledged when Plaintiff terminated her treatment after moving to Akron was non-compliance.  Furthermore, Dr. Berrones consistently ascribed a GAP score of 51-60 for Plaintiff, indicating only some limitation in functioning, despite her depression. The ALJ discredited Plaintiff's claim that she often stayed in bed for a week at a time, based upon her shifting living situation. Tr. at 17. Finally, the ALJ relied upon Plaintiff's ability to maintain a part-time job as a telemarketer, which the ALJ characterized as "requiring constant public contact" and including "increased stress levels" as evidence of a higher level of functioning than Plaintiff alleged.

The ALJ in this case clearly stated her reasons for giving little weight to Dr. Berrones' opinion.  The ALJ correctly concluded that Dr. Berrones' treatment notes do not support her conclusions with respect to the severity of Plaintiff's limitations.  Moreover, the record in its entirety is inconsistent with Dr. Berrones' conclusions, particularly the fact that Plaintiff performs a part-

-10-

time job as a telemarketer.  Accordingly, the ALJ did not violate the treating physician's rule when she gave Dr. Berrones' opinion little weight.

Plaintiff also contends that this matter should be remanded to the ALJ because she failed to consider the impact of Plaintiff's bipolar disorder and her financial situation on her non-compliance with her medication.  However, the treating physician in this case directly addressed Plaintiff's reasons for her non-compliance with her medication.  Dr. Berrones observed that financial problems, not Plaintiff's impairments, were the reason she was not taking her medication.  In fact, Dr. Berrones' notes establish that Plaintiff ran out of her medication prior to an appointment, and that Plaintiff did not want to stop taking the medication because it was improving her symptoms.

Dr. Berrones specifically stated that she believed that Plaintiff's financial problems  were the reason that she was not taking her medication, and the record reflects that Plaintiff was provided sample medication and directed to a social worker who could help her arrange for financial assistance.  Tr. at 593.  Therefore, the record shows that Plaintiff was given the opportunity to take advantage of a patient assistance program to help her afford her medication.  Moreover, the ALJ specifically addressed Plaintiff's inability to afford her medication, and acknowledged that Dr. Berrones recognized Plaintiff's financial problems and attempted to remedy them through public assistance.  Accordingly, the ALJ did consider the motivating factor behind Plaintiff's non-compliance with her medication and included it in her disability analysis.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and Plaintiff's complaint is DISMISSED with prejudice:


DATE: September 28, 2012

                                          */s/George J. Limbert*
                                        GEORGE J. LIMBERT
                                        UNITED STATES MAGISTRATE JUDGE